### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| HOWARD VOELTZ, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN TURLEY et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:08-CV-555 DAK <br><br><br> District Judge Dale A. Kimball |

Plaintiff, Howard Voeltz, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2012). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id*. § 1915. Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim and Failure to Exhaust Administrative Remedies (doc. no. 40).[1]

### ANALYSIS

#### I. Material Facts[2]

1. Howard Voeltz is an inmate at the Utah State Prison. (Am. Compl. at ¶ 1.)

---

[1] Because Defendants' motion relies on materials outside the pleadings, to which Plaintiff has had a reasonable opportunity to respond, the Court will treat the motion as one for summary judgment in accordance with Rule 12(d). *See* Fed. R. Civ. P. 12(d)

[2] The facts presented here are drawn directly from Plaintiff's Amended Complaint and Defendants' Memorandum in Support of Motion to Dismiss (doc. no. 40) and supporting materials. For purposes of this motion Plaintiff's allegations are accepted as true.

2. Defendant Peter Woffenden was employed as an officer working on the Charlie Block of the Wasatch Unit for the Utah Department of Corrections (UDOC) at the time of the claims alleged. (Am. Compl. at ¶ 3.)

3. Defendant Lieutenant DeMill was employed as an officer working on the Charlie Block of the Wasatch Unit for UDOC at the time of the claims alleged. (Am. Compl. at ¶ 5.)

4. Defendant Sharon Daurelle was employed as an investigator for UDOC at the time of the claims alleged. (Am. Compl. at ¶ 8.)

5. Defendant Doug Fawson was employed as an investigator for UDOC at the time of the claims alleged. (Am. Compl. at ¶ 9.)

6. During the relevant time from January 2007 to September 2007, Plaintiff was housed in the Charlie Block Unit, in the Wasatch Facility of the Utah State Prison. (Voeltz Aff. (doc. no. 31) at ¶ 1.) Plaintiff was housed in a two man cell that had a solid door, was relatively sound proof, had no window with a direct view to the outside, was very dark when the light was off, and had a toilet and shower in one section of the cell. Plaintiff was housed on the bottom bunk in this two man cell. Charlie Block (C-Block) was an honor block. (Am. Compl. at ¶ 12.)

7. For unspecified reasons, Plaintiff's cellmate was moving-out on March 21, 2007. Plaintiff found out before this date that a certain prisoner, J.M.,[3] was trying to move in with Plaintiff. Plaintiff did not want J.M. moving in with him, because as Plaintiff states, "I knew he was big trouble, and that he had sexually assaulted other prisoners in the past." (Am. Compl. at ¶

---

[3] Because Plaintiff's allegations were investigated but no charges were filed the alleged attacker is identified only by his initials.

13.)

8. Before March 21, 2007, Plaintiff tried several times without success to get other prisoners to move in with him. (Am. Compl. at ¶ 13.)

9. Plaintiff asked Officer Woffenden to please not move J.M. in with him. Plaintiff states that he also "[t]old [Officer Woffenden] of some of [his] concerns, and . . . also tried to see if other officers might effect the move even though they weren't in charge of moves." (Am. Compl. at ¶ 13.)

10. On more than one occasion other prisoners heard Plaintiff discuss with Officer Woffenden the possibility of either being moved out of the cell he was in, to get away from J.M., or to have J.M. moved elsewhere.[4] (Am. Compl. at ¶ 13.)

11. Plaintiff states that Officer Woffenden told Plaintiff to "put a safety on [J.M.] if [Plaintiff] didn't want [J.M.] in [Plaintiff's] cell, or if [Plaintiff] was scared." (Am. Compl. at ¶ 14.)

12. Plaintiff states that prior to August 30, 2007, he did not place a safety on J.M. because "[it] would be just like snitching on someone which would have made my life even worse throughout the prison."[5] (Am. Compl. at ¶ 14.)

---

[4] In his original Complaint Plaintiff stated that he "only talked to certain people that were not likely to publicize my plight." (Complaint (doc. no. 17) at 7.)

[5] In his original Complaint Plaintiff explained: "[I] apprised the prior authorities about my concerns in a somewhat vague fashion without stating the fact that I was concerned about my physical welfare." (Compl. at 6.) In prison, informants are frowned upon and often times subject to physical attacks because in this sub-culture predators thrive and oppress weaker individuals, thus I was reluctant to come forward and tell what had happened to me, which was obviously dehumanizing and humiliating." (*Id.*)

13. On or about March 27, 2007, Plaintiff told Officer Woffenden that he "just wanted to move to another cell, or have J.M. moved, simple as that." (Am. Compl. at ¶ 14; Voeltz Aff. at ¶ 7.)

14. On or about March 27, 2007, Officer Woffenden told Plaintiff that he would not do courtesy moves. (Am. Compl. at ¶ 14.)

15. Plaintiff states that he made four separate requests to be moved to another cell on C-Block, or to have J.M. moved. (Am. Compl. at ¶ 14.) These allegedly occurred on or about March 21, 2007, March 27, 2007, May 17, 2007, and sometime in the middle of July 2007.[6] (Compl. at 6.)

16. Plaintiff was allegedly sexually assaulted by J.M. on the following dates: April 6, 8, 12, 15, 19, 21, 24, and 29 of 2007, and on May 4, 6, 10, 12, 14, 17, 19, and 21 of 2007. (Am. Compl. at ¶ 15; Voeltz Aff. at ¶ 3.)

17. Plaintiff further alleges: "I was finally able to talk to another prisoner about what was happening. He suggested that he would talk to Lt. DeMill about this. Afterwards the Lieutenant called me out and I told him some of what was going on surrounding being sexually assaulted by J.[M.]. I met with Lt. DeMill on August 23, 2007 or thereabout." (Am. Compl. at ¶ 16.)

18. That same day, on August 23, 2007, Plaintiff was moved out of the cell with J.M. and into cell #204 on C-Block. (Voeltz Aff. at ¶ 9.)

---

[6] Regarding these reports, Plaintiff explained in his original Complaint: "However, I was not pointing the finger directly at [J.M.] because I felt it was my best interest (i.e. to stay alive and not being viewed by the prison, community as both a victim and a "snitch") to not expressly tell what occurred to me under the threat of violence if I exposed the individual." (Compl. at 6.)

19. On August 30, 2007, Plaintiff was taken to the UDOC medical department where he was interviewed by investigators Debbie Kemp and Sharon Daurelle. Lt. DeMill was also present. Plaintiff asked to have criminal charges brought against J.M.. (Am. Compl. at ¶ 16.)

20. Plaintiff eventually put a safety on J.M., but only after he had allegedly been sexually assaulted and discussed the matter with Lt. DeMill. (Am. Compl. at ¶ 14.)

21. Plaintiff was also interviewed by UDOC mental health. (Am. Compl. at ¶ 16.)

22. On or about September 6, 2007, UDOC investigators Sharon Daurelle and Doug Fawson informed Plaintiff that due to a lack of evidence they could not press charges against J.M. based on Plaintiff's allegations. (Am. Compl. at ¶ 16.)

23. Plaintiff's prison grievance records show that for the 2007-2011 time period Plaintiff filed only one grievance which dealt with being removed from the Sex Offender Treatment Program. (Casper Decl. ¶ 17.) Plaintiff never filed any grievances regarding the issues raised in this lawsuit. (*Id.*)

## II. Legal Standards

### A. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before seeking redress in the courts. Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C.A. § 1997e(a) (West 2012). The Supreme Court has held that the PLRA's exhaustion

requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002). Moreover, the Supreme Court has refused to "read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." *Booth v. Churner*, 532 U.S. 731, 741, n. 6, 121 S. Ct. 1819, 1825 (2001). As explained by the Tenth Circuit, "[t]he statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003). Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving. *See Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 919 (2007).

Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *before* filing a complaint in federal court. *See Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741). However, it is well recognized that "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under § 1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *see also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). Thus, "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).

### B. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986).  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998)

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."  *Id.*  Rule 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."  *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).  Mere allegations and references to the pleadings will not suffice.  However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

The Tenth Circuit has recognized that, given the fact sensitive nature of exhaustion determinations, "a motion for summary judgment limited to the narrow issue of exhaustion and

the prisoner's efforts to exhaust is appropriate." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. 199. When deciding such a limited motion for summary judgement the court applies the same procedures used for other summary judgment determinations. (*Id*.) Thus, the moving party bears the initial burden of showing that there is an absence of evidence to support the plaintiff's contention that he exhausted all available administrative remedies. Once the moving party has made such a showing, the burden then shifts to the nonmoving party to produce admissible evidence showing that genuine issues of material fact exist precluding summary judgment on the exhaustion question.

### III.  Defendants' Motion to Dismiss

Defendants contend that Plaintiff's claims are barred under the PLRA based on Plaintiff's failure to exhaust available administrative remedies. To support this contention Defendants have submitted the Declaration of Billie Casper, USP Grievance Coordinator, which states that there is no record Plaintiff ever filed any grievances regarding being sexually assaulted or having other problems with his cell-mate. This evidence is sufficient to satisfy Defendants' initial burden on summary judgment of showing that there is an absence of evidence to support the conclusion that Plaintiff exhausted available administrative remedies regarding his claims. Thus, Defendants have successfully shifted to Plaintiff the burden of showing that he either exhausted all available grievance remedies or that no such remedies were available to him.

Plaintiff has not met his burden. In fact, Plaintiff has not responded at all to Defendants'

Motion to Dismiss, despite being afforded multiple extensions of time in which to do so.  Most recently, on February 17, 2011, Plaintiff requested an additional ninety days to file a response and was granted an extension of sixty-five days from March 1, 2012.  (Doc. no. 45.)  Plaintiff was warned that failure to respond would result in the motion being decided based on the briefs submitted.  (*Id*.)  Almost a year has now passed since the filing of Defendants' motion and Plaintiff has not filed a response, nor has he offered any reasonable explanation for his failure to do so.

      Based on the present record the Court concludes that Plaintiff could have sought relief under the USP Grievance Policy.  Plaintiff's failure to do so cannot be excused.  Thus, Defendants are entitled to dismissal of Plaintiff's claims under the PLRA.[7]

---

[7] Having concluded that Plaintiff's claims are barred under the PLRA the Court declines to address whether Plaintiff's allegations are sufficient to state a claim.

# ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss (doc. no. 40) is **GRANTED** based on Plaintiff's failure to exhaust available administrative remedies as required under the PLRA; and,

(2) this case is **CLOSED**.

Dated this 13th day of September, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge